UNITED STATES of America,
Appellant,

v.

LeBEOUF BROS. BARGE CO., Inc.,
Claimant of the Tank Barge
LBTCO No. 8, Appellee.

No. 21532.

United States Court of Appeals
Fifth Circuit.

Nov. 7, 1966.

David L. Rose, Walter H. Fleischer, Attys., Dept. of Justice, John W. Douglas, Asst. Atty. Gen., Louis C. LaCour, U. S. Atty., Washington, D. C., for appellant.

Charles E. Lugenbuhl, New Orleans, La., for appellee, Lemle & Kelleher, New Orleans, La., of counsel.

Before JONES and COLEMAN, Circuit Judges, and HEEBE, District Judge.

COLEMAN, Circuit Judge:

This libel was filed by the United States under the Oil Pollution Act, 43 Stat. 604 (1924), 33 U.S.C.A. Sections 432–434 (1957), to assess penalties against a barge which leaked oil into a lock in the Gulf Intracoastal Waterway at Algiers, Louisiana. The Court below dismissed the libel, ruling that the leakage of oil did not violate the act because it was an "unavoidable accident" and because the discharge of oil was de minimis, " * * * not the type of discharge at which the statutory prohibition is directed". Being of the opinion that the liability of the appellee is controlled by Hegglund v. United States, 5 Cir., 1938, 100 F.2d 68, we reverse, with directions.

In 1959, LeBeouf Bros. Barge Co. had six identical barges built. Five of the barges were operated without difficulty, but the sixth, the LBTCO No. 8, has, in the words of the President and owner of fifty per cent of LeBeouf Bros. stock, "been a lulu". The barge had been known to leak since it was about a year old. Twice after the barge leaked in 1960, it was taken to "Barker Barge", a repair yard, where it was drydocked, "gas freed and all". It was also taken to the Algiers Drydock at an unspecified date.

On August 13, 1961, the barge, loaded with crude oil, entered the Algiers Lock of the Gulf Intracoastal Waterway. As the barge started through the lock, pushed by a tug, employees of the United

States Army Engineers stationed at the lock noticed small bubbles of oil coming up from the side of the barge. The bubbles were called to the attention of the crew, who also observed the oil leaking out. The tug and barge then backed out of the lock, leaving behind an oil slick in the lock. The lock employees testified from notes that the slick was twenty or twenty-five feet in diameter. The owner of the tug estimated the slick's diameter at three feet. There was not enough oil to discolor the lock walls. No action was required to wash the oil out of the lock; it worked itself out into the river. A member of the Coast Guard who went aboard the barge after it was backed out saw no bubbles of oil coming from the barge. The barge was taken to Avondale Shipyards, where testing disclosed no leak.

Three or four days later, the barge was again loaded with oil and headed for the same lock. Prior to reaching the lock, the crew noticed the barge again leaking oil from the same point. The barge was returned to Avondale Shipyards, and the leak was found and repaired. The owners are not aware of any leakage problems since those repairs were made.

At the trial, the President of LeBeouf Bros. testified his men were instructed to be on the lookout for leaks. The tug pilot testified he had had no trouble with the barge during the thirty days prior to August 13, 1961. The barge apparently had been issued an inspection certificate by the Coast Guard in April 1961. Witnesses for the appellee were of the view that the leak in the barge was a "high-pressure leak". Such leaks result from defects in the welding of the seams of the vessel, and may be difficult to locate, because the leaks may open only when a loaded barge is placed under certain stresses.

The Court found that it had jurisdiction in admiralty and that the discharge of oil occurred within the " * * * coastal navigable waters of the United States * * * " within the meaning of Section 432(c) of the Oil Pollution Act,

further finding unavoidable accident and applying the rule of de minimis.

The Government's specification of error is concisely to the point, so we adopt it as the question presented:

"The district court erred in ruling that the discharge of oil by appellee's barge, due to a defect in the construction of the vessel, was an 'unavoidable accident' within the meaning of the Oil Pollution Act, 1924, when the barge had a history of repeated leakage and there was no record evidence that the barge was a tight ship, duly inspected."

"Unavoidable accidents" comprise a statutory defense under the Oil Pollution Act. That defense has been construed rather narrowly, and this Court has required "vigilance and foresight" of the person responsible for the ship, Hegglund v. United States, 5 Cir., 1938, 100 F.2d 68.

In *Hegglund*, the ship had leaked two or three times before. Each time it leaked the ship had been drydocked, the leaks located and repaired. This degree of care did not suffice for absolution. The Court declared:

We hold that if the Bidwell was a tight ship, duly inspected, and loaded without any previous reason to expect that oil would be discharged from her but that it did leak out unavoidably from some accidental or unknown cause, there would be a discharge through unavoidable accident. But if she was known to be likely to leak when loaded, the master could not claim an unavoidable accident when she did thus leak.

See, also, United States v. The Catherine, 4 Cir., 1954, 212 F.2d 89.

■ By appellee's proof, it knew that the tank barge LBTCO No. 8 was not a tight ship, there is no proof in the record of any inspection after loading, and there was much reason to expect that leakage would occur.

■ The doctrine of de minimis does not apply. In *Hegglund* it was held that the amount of oil discharged is not the

test of guilt, any amount which can be avoided is prohibited.

In view of its prior diligence to have the leaks remedied, as well as in consideration of the small amount of oil discharged, the Court can appreciate appellee's vigorous resistance to a penalty in this case, as well as the views of the Court below.

Nevertheless, *Hegglund,* in our opinion, leaves no choice but that the judgment below must be reversed, with directions that the District Court impose such penalty, within its discretion, as provided by the statute.

Reversed, with directions.